**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>                    Debtors. | CHAPTER 11<br><br>Case No. 08-13555 (SCC) |
| LEHMAN BROTHERS HOLDINGS INC.,<br><br>                    Plaintiff,<br>     v.<br><br>1st ADVANTAGE MORTGAGE, L.L.C., *et al.*,<br><br>                  Defendants. | Adv. Proc. No. 16-01019 (SCC) |
| AND COORDINATED ADVERSARY PROCEEDINGS | |

**LEHMAN BROTHERS HOLDINGS INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**
<u>**ON NOTICE OF SETTLEMENT OF RMBS CLAIMS**</u>

**Table of Contents**

Preliminary Statement .................................................................................................................. 1

Background ................................................................................................................................. 3

    A.  LBHI Vigorously Defended Claims Filed By RMBS Trustees, Resulting
        In a Proposed Settlement and the Estimation Hearing ...................................................... 3

    B.  LBHI Notified Defendants of the Proposed Settlement and Estimation
        Hearing ............................................................................................................................. 4

    C.  LBHI Vigorously and Successfully Defended Itself, and the
        Indemnifying Defendants, During the Estimation Hearing ............................................. 5

Argument .................................................................................................................................... 7

    I.    LBHI Provided Notice of the RMBS Settlement to 111 of the Defendants ................... 9

    II.   The Unique History and Posture of this Litigation Obviates the Need for LBHI to
        Establish that It Would Have Been Liable to the RMBS Trustees .............................. 11

Conclusion ................................................................................................................................ 14

# Table of Authorities

**Cases**                                                                                                                                      **Page(s)**

*Algie v. RCA Glob. Commc'ns, Inc.*,
    891 F. Supp. 875 (S.D.N.Y. 1994) ............................................................................... 7

*Alton M. Johnson Co. v. M.A.I. Co.*,
    463 N.W.2d 277 (Minn. 1990) .................................................................................. 13

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ..................................................................................................... 7

*Atlantic Richfield Co. v. Interstate Oil Transport Co.*,
    784 F.2d 106 (2d Cir. 1986) ........................................................................................ 8

*Casey ex rel. Casey v. Ryder Truck Rental, Inc.*,
    2005 WL 1150228 (E.D.N.Y. 2005) ...................................................................... 8, 11

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ..................................................................................................... 7

*Deutsche Bank Trust Co. of Ams. v. Tri-Links Inv. Trust*,
    74 A.D.3d 32 (1st Dep't 2010) .................................................................................. 10

*Evergreen Marine Corp. (Taiwan) Ltd v. Global Terminal & Container Servs., Inc.*,
    2000 WL 1683449 (S.D.N.Y. 2000) ....................................................................... 8, 11

*Feuer v. Menkes Feuer, Inc.*,
    8 A.D.2d 294 (1st Dep't 1959) ............................................................................ passim

*In re Lew*,
    2011 WL 5836481 (Bankr. S.D.N.Y. Nov. 21, 2011) ................................................ 7

*In re Refco Inc. Sec. Litig.*,
    2013 WL 12191891 (S.D.N.Y. Mar. 11, 2013) ........................................................... 7

*In re RFC and RESCAP Liquidating Trust Action*,
    332 F. Supp. 3d 1101 (D. Minn. 2018) .................................................................... 13

*Jackson Nat'l Life Ins. Co. v. Workman Sec. Corp.*,
    803 F. Supp. 2d 1006 (Minn. 1990) .......................................................................... 13

*Nat'l Union Fire Ins. Co. of Pitt., PA v. Red Apple Grp., Inc.*,
    309 A.D.2d 657 (1st Dep't 2003) ................................................................................ 8

*Nesterczuk v. Goldin Management, Inc.*,
   77 A.D.3d 800 (2d Dep't 2010) ...................................................................................... 10

*Shihab v. Bank of New York*,
   211 A.D.2d 430 (1st Dep't 1995) .................................................................................... 10

*Tokio Marine v. Macready*,
   803 F.Supp.2d 193 (E.D.N.Y. 2011) ............................................................................... 10

*Tokio Marine & Fire Ins. Co. v. McDonnell Douglas Corp.*,
   465 F. Supp. 790 (S.D.N.Y. 1978) .................................................................................. 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2017) .............................................................................................. 14

*Waltz v. MRC Mgmt., LLC*,
   378 F. Supp. 2d 440 (S.D.N.Y. 2005) ....................................................................... 12, 13

*Xerox Corp. v. Media Sciences, Inc.*,
   609 F.Supp.2d 319 (S.D.N.Y. 2009) ............................................................................... 14

*Zurich Am. Ins. Co. v. Tower Nat'l Ins. Co.*,
   159 A.D.3d 418 (1st Dep't 2018) ........................................................................... 7, 8, 11

## **Rules**

Fed. R. Civ. P. 56 ..................................................................................................................... 1, 7

Fed. R. Bankr. P. 7056 ............................................................................................................. 1, 7

Pursuant to Federal Rule of Civil Procedure 56(a) and Federal Rule of Bankruptcy Procedure 7056, Plaintiff Lehman Brothers Holdings Inc. ("Plaintiff" or "LBHI"), by its undersigned attorneys, hereby moves for an order granting partial summary judgment in favor of Plaintiff. LBHI asks the Court to rule that (1) as to certain defendants (identified below), LBHI provided notice of its settlement of claims asserted against LBHI by the trustees of certain residential mortgage backed securities ("RMBS") trusts, and (2) as to all defendants, LBHI can establish a right to indemnification upon a showing that the settlement, with a value fixed by the Court following a 22-day estimation hearing, was reasonable and entered into in good faith.

**PRELIMINARY STATEMENT**

In these coordinated adversary proceedings, LBHI seeks to enforce its right to indemnification against 133 originators from which LBHI acquired mortgage loans ("Defendants"). LBHI either sold those loans to the Federal National Mortgage Association and/or the Federal Home Loan Mortgage Corporation (together, the "GSEs"), or securitized the loans and sold the resulting RMBS certificates to investors. In either case, LBHI made representations and warranties that were coextensive with those made by the Defendants. The GSEs and certain trustees ("Trustees") for RMBS trusts ("Trusts") asserted claims against LBHI for alleged breaches of those representations and warranties. LBHI eventually settled those claims. This motion relates to LBHI's indemnification rights as to that settlement.

The RMBS litigation was "*sui generis* – decidedly the only one of its kind." Kuehn Decl., Ex. 1, at Ex. A at 2:17-19 ("Estimation Order"). A decade ago, the Trustees filed claims against LBHI asserting $37 billion of liability for RMBS mortgage repurchase claims. LBHI vigorously defended those claims and ultimately reduced its liability to $2.38 billion, following nine years of litigation, immense legal fees, the re-underwriting of 174,000 mortgage loan files, and a 22-day estimation hearing at which the Court fixed LBHI's liability (the "Estimation Hearing").

1

Having defended the RMBS repurchase claims, LBHI now seeks indemnification for a portion of its liability to the RMBS Trustees for loans the Defendants sold to LBHI affiliates. LBHI only seeks a portion of its total liability to the trusts because, as it knew when it was negotiating with the Trustees, many originators against which it could assert indemnification claims have gone out of business. Thus, throughout LBHI's decade-long defense against claims by the RMBS trusts, LBHI knew it would would not recover a substantial portion of the amount it paid to settle the RMBS claims; it had skin in the game. In short, LBHI does not seek indemnification as a "volunteer" that had no incentive to vigorously defend its claims, shifting the burden to its indemnitors.

LBHI provided notice of the settlement with the Trusts (the "RMBS Settlement") and the Estimation Hearing to nearly all Defendants in these consolidated proceedings – 111 out of 133 Defendants – as well as many other originators that LBHI has not pursued. Only one originator—not a Defendant in these proceedings – appeared to object or participate in the RMBS Settlement and Estimation Hearing. It is not surprising that no Defendant appeared or objected to the RMBS Settlement or the Estimation Hearing because LBHI defended its own liability strenuously and effectively, protecting LBHI's other creditors and the Defendants obligated to indemnify LBHI. As to LBHI's indemnification claims against those 111 Defendants, LBHI clearly need only establish that the RMBS Settlement was reasonable and entered into in good faith. Further, given the unique history and circumstances of the settlement, LBHI should be permitted to establish a right to indemnification from the remaining 22 Defendants under the same standard. In particular, with many originators that sold loans to LBHI long defunct, the Trustees' claims confronted LBHI with a massive exposure for which it in effect had no indemnification. There is thus no reason to doubt vigor and intensity of LBHI's defense against those claims.

2

## BACKGROUND

### A. LBHI Vigorously Defended Claims Filed by RMBS Trustees, Resulting in the Proposed Settlement and the Estimation Hearing

Approximately one year after LBHI filed for bankruptcy in 2008, RMBS trustees representing approximately 400 trusts – including the 225 Trusts with which LBHI later settled and is now seeking indemnification– filed claims against LBHI and affiliates asserting $37 billion in loan repurchase claims. Statement of Undisputed Material Fact ("SUMF") at ¶ 1. In 2012, LBHI and the Trustees agreed to reserve $5 billion for the Trusts' claims and attempted, unsuccessfully, to mediate their dispute. *Id*. at ¶ 2.

LBHI contested the Trusts' claims vigorously and moved to require the Trustees to engage in a loan-level review process approved by the Court (the "Protocol"). SUMF at ¶¶ 3, 4. To comply with the Protocol's strict timelines, the Trustees assembled "small armies of loan review firms and re-underwriting personnel," *Id*. at ¶ 5, who reviewed 171,000 loan files and found alleged breaches in 94,000 loans. *Id*. at ¶ 6. LBHI similarly embarked on the grueling task of reviewing massive numbers of loan files and approving or rejecting asserted claims. *Id*. at ¶ 7.

In October 2015, following another mediation and extensive negotiations, LBHI and a group of financial institutions comprising the Trusts' largest group of certificateholders entered into a proposed settlement of the Trusts' claims for an allowed claim of $2.44 billion. SUMF at ¶ 8. The Trustees, however, declined to support the settlement and LBHI withdrew it. *Id*. at ¶ 9.

In March 2017, following additional re-underwriting by both LBHI and the Trustees, LBHI and the group of institutional investors signed a modified settlement agreement (the "Settlement Agreement"), SUMF at ¶ 10, Under that compromise, LBHI agreed to seek allowance of a $2.38 billion claim, subject to an estimation proceeding at which the Trusts could ask "the Court to estimate the allowed claim amount that would have resulted from the completion of the Protocol

3

and specifically to consider whether the Trustees have shown that they are entitled, under the Protocol, to an allowed claim greater than $2.38 billion." *Id.* at ¶ 11. The Court was free, of course, to set the claim at whatever level it concluded was appropriate in light of the evidence and arguments presented.

### B. LBHI Notified Defendants of the Proposed Settlement and the Estimation Hearing

On March 22, 2017, LBHI moved to schedule a hearing on approval of the Settlement Agreement and set notice provisions for the Estimation Hearing. On April 28, 2017, Epiq Bankruptcy Systems ("Epiq"), on behalf of LBHI, served on hundreds of legal entities and individuals, via first class mail, a copy of the Notice of Motion of Lehman Brothers Holdings Inc. for approval of the RMBS Settlement Agreement (the "9019 Settlement Motion"). SUMF at ¶ 12.

Epiq served the 9019 Settlement Motion on nearly all current defendants. *See id.* at ¶ 13. Many defendants were served at multiple addresses. *Id.* Where counsel was known, defendants also were served care of their attorneys and at their business addresses. *Id.* In addition, the RMBS Settlement was covered in various media outlets, including *The Wall Street Journal*. *Id.* at ¶ 18.

On July 6, 2017, the Court held a hearing on the settlement, approved it, and scheduled the Estimation Hearing that would fix the settlement amount and provide the Trustees an opportunity to establish liability greater than $2.38 billion. SUMF at ¶ 14. Although at least 111 Defendants had been served, only one loan originator – not a Defendant here – appeared at the hearing. *Id.* at ¶ 15. No current Defendant appeared at the settlement hearing or the Estimation Hearing and no current Defendant either offered to participate or objected to the settlement. *Id.* at ¶¶ 16-17.

---

[1] One RMBS trust, SASCO 2006-4, declined to approve and thus opted out of the settlement that called for estimating the RMBS claims. In addition, certain trusts collapsed prior to the Estimation Hearing, and loans within those trusts were not part of the Estimation Hearing. This Motion does not apply to loans within SASCO 2006-4 or the collapsed trusts.

### C. LBHI Vigorously and Successfully Defended Itself, and Defendants, During the Estimation Hearing

During the 22-day Estimation Hearing held between November 20, 2017 and February 8, 2018, the Court heard live testimony of 12 witnesses, viewed or reviewed deposition testimony of 3 additional witnesses, and considered documentary evidence, including expert reports addressing millions of pages of individual loan files. SUMF at ¶ 19. Each witness was subjected to extensive cross examination, with some witnesses testifying for as many as three days. *Id*. at ¶ 20. The trial transcript exceeds 4,000 pages. *Id*. at ¶ 21. During the hearing, LBHI conceded breaches, and thus liability, for 1,263 loans, but challenged the sufficiency of the evidence for more than 70,000 remaining loans. *Id*. at ¶ 22.[2]

Following the Estimation Hearing, the Court issued a 168-page opinion addressing the testimony of the witnesses, the written evidence, and the expert opinions. As the Court stated, "not only have the loans and the loan files themselves been on trial but the processes by which each of the parties reviewed the loan files and breach claims have also been put on trial." SUMF at ¶ 23. The Court fixed an allowed claim of $2.38 billion. *Id*. at ¶ 24. The RMBS Settlement released claims by the RMBS Trustees related to over 70,000 mortgages that had been acquired by LBHI from over 6,200 different originators.

In these coordinated adversary proceedings, LBHI seeks indemnification from 133 of those mortgage originators, under the following indemnification provision in the Seller's Guide for LBHI loan purchases:

> In addition to any repurchase and cure obligations of Seller, . . . Seller shall indemnify Purchaser and Purchaser's designee (including, without limitation, any subsequent holder of any Note) from and hold them harmless against all claims, losses, damages, penalties, fines, claims, forfeitures, lawsuits, court costs, reasonable

---

[2] Between the end of the parties' efforts to resolve the dispute through the Protocol and the start of the Estimation Hearing, the RMBS Trustees dropped claims as to approximately 20,000 loans.

5

> attorney's fees, judgments and any other costs, fees and expenses that the Purchaser may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to this Seller's Guide or the Loan Purchase Agreement by any agent, employee, representative or officer of Seller or Seller's correspondent. In addition to any and all other obligations of Seller hereunder, Seller agrees that it shall pay the reasonable attorney's fees of Purchaser incurred in enforcing Seller's obligations hereunder . . . .

SUMF at ¶ 25.[3] While the Seller's Guide requires the originator—or "Seller"—to provide notice of received claims, the guide imposes no notice obligations on the Purchaser—LBHI's predecessor:

> The Seller immediately shall notify the Purchaser if a claim is made by a third party with respect to this Seller's Guide, the Loan Purchase Agreement or the Mortgage Loans, assume (with the prior written consent of the Purchaser) the defense of any such claim and pay all expenses in connection therewith, including counsel fees, and promptly pay, discharge and satisfy any judgment or decree which may be entered against it or the Purchaser in respect of such claim. The Purchaser promptly shall reimburse the Seller for all amounts advanced by it pursuant to the preceding sentence except when the claim is in any way related to the Seller's indemnification with respect to a breach by the Seller of any representation or warranty, or the failure of the Seller with respect to any of the Seller's obligations under this Seller's Guide or the Loan Purchase Agreement.

*Id.* at ¶ 27.

These adversary proceedings cover only a fraction of the mortgages and the originators of mortgages covered by the RMBS Settlement. SUMF at ¶ 28. Although LBHI has pursued out-of-court resolution of indemnification claims against some non-Defendant originators, the originators

---

[3] Each Loan Purchase Agreement ("LPA") pursuant to which LBHI brings the claims in these adversary proceedings provides that the LPA and the incorporated Seller's Guide is governed by the laws of the state of New York. SUMF at ¶ 26.

6

of the majority of the loans covered by the RMBS Settlement appear to be defunct, and LBHI likely cannot enforce their indemnification obligations. *Id.* at ¶ 29.

## ARGUMENT

Summary judgment under Federal Rule 56 and Bankruptcy Rule 7056 is required when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; Fed. R. Bankr. P. 7056; *In re Lew*, No. 11-10346 ALG, 2011 WL 5836481, at *3 (Bankr. S.D.N.Y. Nov. 21, 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If a movant establishes that no evidence supports the non-movant's case, the movant meets its burden for summary judgment. *Celotex*, 477 U.S. at 325.

"The purpose of a partial summary judgment motion is to promote efficiency and narrow the scope of a trial to the issues that are reasonably disputed." *In re Refco Inc. Sec. Litig.*, No. 07-MD-1902 (JSR), 2013 WL 12191891, at *3 (S.D.N.Y. Mar. 11, 2013) (citing Moore's Federal Practice 3d ¶ 56.40[2] (recognizing that partial summary judgment may be appropriate for matters not in controversy to promote "economical and expeditious" proceedings)); *see also Algie v. RCA Glob. Commc'ns, Inc.*, 891 F. Supp. 875, 883 (S.D.N.Y. 1994) (the purpose of granting motions for partial summary judgment "is to speed up litigation by eliminating before trial matters wherein there is no genuine issue of fact") (quoting Fed. R. Civ. P. 56(d), Advisory Committee Notes (1946)).

When an indemnitor receives notice of a claim and a proposed settlement, the indemnified party may recover from the indemnitor if it establishes that the settlement was reasonable and entered into in good faith. *Zurich Am. Ins. Co. v. Tower Nat'l Ins.*, 159 A.D.3d 418, 419 (1st Dep't 2018); *Koch Indus., Inc. v. Aktiengesellschaft*, 727 F. Supp. 2d 199, 217 (S.D.N.Y. 2010) (single

7

letter notifying indemnitor of claims without estimate of liability was sufficient notice, and indemnified party need only show settlement was reasonable and entered into in good faith). Only where the indemnitor has not received notice of the claims must the indemnified party also prove that it would have been liable and that it had no good defense. *Id. See also Nat'l Union Fire Ins. Co. of Pitt., PA v. Red Apple Grp., Inc.*, 309 A.D.2d 657, 657 (1st Dep't 2003) (same); *Feuer v. Menkes Feuer, Inc.*, 8 A.D.2d 294, 299 (1st Dep't 1959) (same); *Evergreen Marine Corp. (Taiwan) Ltd v. Global Terminal & Container Servs., Inc.*, No. 99 Civ. 10544 (NRB), 2000 WL 1683449, at *3 (S.D.N.Y. Nov. 9, 2000) ("[A]n indemnitee can recover from an indemnitor upon proof of potential liability only if '(1) the settlement is reasonable, and if (2) the indemnitor has sufficient notice in which to object to the settlement terms. When the indemnitor objects and the indemnitee fails to tender the defense of the action, the indemnitee must prove actual liability.'") (quoting *Atlantic Richfield Co. v. Interstate Oil Transport Co.*, 784 F.2d 106, 112 (2d Cir. 1986).

The public policy purpose of the notice requirement is to ensure that "indemnity will not be granted to a 'volunteer.'" *Casey ex rel. Casey v. Ryder Truck Rental, Inc.*, No. 00 CV 2856 (CLP), 2005 WL 1150228, at *7 (E.D.N.Y. May 16, 2005). In other words, courts seek to prevent an indemnified party from unfairly free-riding on its indemnitor by passing along a liability it would not itself accept:

> The explanation for the higher requirement that an indemnitee, who has not given notice, or who has rejected defense by the indemnitor, establish that he had been liable to the claimant stems from the fact that his action with regard to the claim is completely free of control by the indemnitor. **Since, under such circumstances, the indemnitee knows or believes that any financial responsibility he undertakes is likely to fall ultimately on the indemnitor, he is not inhibited, except by the barest self-restraint.** This is an insufficient protection for an indemnitor; and, as a consequence, the indemnitee acts at his own risk that later he will be able to establish that the payment he made was one he had to make. **Needless to say, even this is not an absolute test**. He meets his burden if he shows,

8

> by satisfying the finder of the facts by the preponderance of the evidence **or other appropriate level of proof**, that he would have been liable.

*Feuer*, 8 A.D.2d at 300 (emphasis added). In these coordinated adversary proceedings, LBHI did provide notice to the vast majority of the Defendants. Regarding the remaining Defendants, the unique nature of this case and important public policy considerations weigh in favor of applying the same standard to all Defendants, and thus allowing LBHI to establish a right to indemnification upon a showing that the RMBS Settlement was reasonable and entered into in good faith.

### I. LBHI Provided Notice of the RMBS Settlement to 111 Defendants

Although the Seller's Guide indemnification provisions do not require notice, it is undisputed that on April 18, 2017, LBHI, through its vendor Epiq, served notice of the proposed RMBS Settlement and the Estimation Hearing on 111 of the 133 Defendants ("<u>Settlement Notice</u>"). The notice attached the proposed Settlement Agreement, which explicitly stated that the settlement would not release claims that LBHI may have had against loan sellers with indemnification obligations. SUMF at ¶ 30 (proposed settlement will not release "claims against parties other than the Released Parties related to the origination and/or sale of the mortgage loans sold or securitized by the LBHI Debtors…"); *id*. at ¶ 31 ("The Parties do not release or waive any rights or claims against any party that is not a Released Party, including: (a) repurchase and indemnity claims any Trustee or any Released Party may have against any mortgage originator (including brokers, bulk sellers, and correspondents)…"); *id*. at ¶ 32 "notice of the settlement agreement 'shall be provided…[to] all known mortgage originators (including all known brokers, bulk sellers, and correspondents against whom the LBHI Debtors may have indemnity claims arising from the Settlement Agreement)…'"). The 9019 Settlement Notice also disclosed the time, date and location of the Court's initial hearing on the proposed settlement and set out procedures for objecting to LBHI's motion to approve the settlement. *Id*. at ¶ 33.

9

Only one originator appeared at either the settlement hearing or at the Estimation Hearing. That entity, which is not a Defendant here, obtained an individual reservation of rights in the RMBS Settlement approved by the Court. No current Defendant appeared at either the 9019 settlement hearing or at the Estimation Hearing, despite service of the 9019 Settlement Notice. SUMF at ¶ 34. In addition, no Defendant objected to the settlement or the estimation hearing process. *Id.* at ¶ 35.

On these undisputed facts, the Court should rule that LBHI provided notice of the RMBS Settlement to 111 Defendants. "No Particular form of notice and no formal notice is necessary to bind an indemnitor." *Deutsche Bank Trust Co. of Ams. v. Tri-Links Inv. Trust*, 74 A.D.3d 32, 47 (1st Dep't 2010) (citation omitted). "[T]he relevant inquiry in determining whether an indemnitor had sufficient notice of a settlement is not whether the indemnitor had specific notice of the indemnitee's settlement negotiations, but whether the indemnitor had notice of the underlying claim such that it had an ample opportunity to defend its interests." *Tokio Marine v. Macready*, 803 F. Supp. 2d 193, 202 (E.D.N.Y. 2011) (citing *Deutsche Bank Trust Co.*, 74 A.D.3d at 43-44). *See also Nesterczuk v. Goldin Mgmt., Inc.*, 77 A.D.3d 800, 804 (2d Dep't 2010) (indemnitor bound to indemnitee's settlement where indemnitor was "on notice of the plaintiffs' claims against the [indemnitee], the reasonable possibility that those claims were encompassed by the indemnification clause, that the settlement was reasonable and made in good faith, and that the [indemnitee] could have been found liable to the plaintiffs"); *Shihab v. Bank of New York*, 211 A.D.2d 430, 431-32 (1st Dep't 1995) (indemnitor bound by reasonable good faith settlement where, after provided with the terms of settlement, indemnitor takes "no steps to protest").

Because notice of the claims of the RMBS Trustees and the RMBS Settlement was provided to these 111 Defendants, the Court should find that as to them, LBHI is entitled to

10

indemnification upon a showing that the RMBS Settlement was reasonable and entered into in good faith. *See Zurich Am. Ins. Co.*, 159 A.D.3d at 419 (reversing dismissal of indemnification claims and finding that where indemnitor had notice of claims, it will be bound by any reasonable good faith settlement of those claims); *Evergreen Marine Corp.*, 2000 WL 1683449, at *3.

## II. The Unique History and Posture of this Litigation Obviates the Need for LBHI to Establish that It Would Have Been Liable to the RMBS Trustees

Given the *sui generis* nature of the RMBS Settlement, LBHI should not be required to establish that it would have been liable to the Trusts in order to seek indemnification from Defendants that were not provided notice of the RMBS Settlement. The purpose of requiring an indemnitee to provide notice of a settlement is to enforce the maxim that "indemnity will not be granted to a 'volunteer.'" *Casey*, 2005 WL 115028, at *7 (quoting *Tokio Marine & Fire Ins. Co.*, 465 F. Supp. at 794). The notice requirement ensures that the indemnitee will settle for a fair amount rather than saddling the indemnitor with an unfair liability. *Feuer*, 8 A.D.2d at 300 (noting that, in general, where an indemnitee settles claims without approval of the indemnitor, "the indemnitee knows or believes that any financial responsibility he undertakes is likely to fall ultimately on the indemnitor, he is not inhibited, except by the barest self-restraint").

In this litigation, there is no such risk. The following facts are undisputed:

- LBHI spent tens of millions of dollars over several years defending claims by the RMBS Trustees. SUMF at ¶ 36.

- Through its efforts, LBHI reduced the claims substantially, ultimately to $2.38 billion. *Id*. at ¶ 37.

- The Court set the claim amount of $2.38 billion following the 22-day Estimation Hearing with 12 live witnesses and deposition transcripts and video from three additional witnesses. *Id.* at ¶ 38.

- Because LBHI cannot collect indemnification from the defunct sellers of many loans at issue in the RMBS Settlement and Estimation Hearing, LBHI remains ultimately liable and without recourse for a significant portion of the payment it made under the RMBS Settlement. *Id.* at ¶ 39.

11

In short, LBHI at all times had "skin in the game," defended the claims vigorously, and can in no way be characterized as a "volunteer." *Casey*, 2005 WL 115028 at *7. As important, LBHI did not hammer out the Settlement Agreement in a vacuum, but rather under the extensive supervision of the Court in, among other things, setting the Protocol and fixing the claim amount at $2.38 billion following the 22-day Estimation Hearing. SUMF at ¶ 38. In short, there is no danger that requiring un-served Defendants to meet their indemnification obligations would in any way stick them with the sort of unwarranted liability that the notice requirement seeks to avoid. *Feuer*, 8 A.D.2d at 300.

Thus, to the extent certain Defendants were not provided notice, or if the Court determines that the notice provided by the 9019 Settlement Notice was not sufficient, given the unique posture of this litigation in which hundreds if not thousands of potential indemnitors would have had to coordinate defense of the RMBS Trustees' claims upon tender by LBHI, LBHI should be permitted to establish a right to indemnification by a showing that the RMBS Settlement was reasonable and entered into in good faith. Even black letter New York law recognizes that the standard of proof in establishing a right to indemnity is flexible, stating that with respect to establishing a right to indemnity absent notice, "even this is not an absolute test. He meets his burden if he shows, by satisfying the finder of the facts by the preponderance of the evidence or other appropriate level of proof, that he would have been liable." *Id*. (emphasis added). That is precisely what the 22-day trial in the Estimation Hearing did. LBHI knew that it could not shift all liability to solvent, indemnifying parties—which is evident in the extraordinary efforts it took over many years of litigation to slash the volume of the claims against it. LBHI "was not in the position of an indemnitee that agrees to an inflated settlement amount knowing that it will be able to obtain full reimbursement from the indemnitor." *Waltz v. MRC Mgmt., LLC*, 378 F. Supp. 2d 440, 443

(S.D.N.Y. 2005). Rather, LBHI "faced, and continues to face, potential liability for some or all of the plaintiffs' damages." *Id*. (distinguishing *Feuer* in context of reasonableness determination).

No authority in the Second Circuit or the New York courts addresses indemnification in a situation like this case involving hundreds, or even thousands, of indemnitors from whom LBHI may seek indemnification. Rather, in the applicable cases, an indemnitee sought indemnification from a single indemnitor, or at most several indemnitors. Outside of New York and the Second Circuit, LBHI is aware of one analogous matter: the *RFC and RESCAP Liquidating Trust Action*. In *RFC*, the plaintiff – the liquidating trust for bankrupt mortgage securitizer Residential Funding Corporation and certain affiliates (collectively, "RFC"), sought indemnification from mortgage originators from which RFC purchased mortgage loans. *See, e.g., In re RFC and RESCAP Liquidating Trust Action*, 332 F. Supp. 3d 1101, 1126 (D. Minn. 2018). Addressing RFC's burden in seeking indemnification for settlements RFC made, including with a group of RMBS trustees, the court noted that under Minnesota law, RFC need not establish its own liability. *Id*. at 1130 ("With respect to the considerations of the underlying liability, '[t]he party seeking indemnification need only show it could have been liable under the facts shown at trial not whether they would have been liable.'") (quoting *Jackson Nat'l Life Ins. Co. v. Workman Sec. Corp.*, 803 F. Supp. 2d 1006, 1012 (D. Minn. 2011)). Although applying Minnesota law rather than New York law, the court tacitly recognized the waste of requiring otherwise, stating that "[i]ndeed, '[r]easonableness ... is not determined by conducting the very trial obviated by the settlement.'" *Id*. (quoting *Alton M. Johnson Co. v. M.A.I. Co.*, 463 N.W.2d 277, 279 (Minn. 1990)).

Finally, public policy concerns strongly support permitting LBHI to establish a right to indemnification without proving its own liability in these unique circumstances. To require such proof in proceedings like this would discourage settlements and result in endless and costly

13

litigation. *See e.g., Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2017) (noting policy favoring settlements, and stating "[t]he compromise of complex litigation is encouraged by the courts and favored by public policy") (quoting 4 NEWBERG § 11:41, at 87); *Xerox Corp. v. Media Sciences, Inc.*, 609 F. Supp. 2d 319, 326-27 (S.D.N.Y. 2009) (noting policy favoring settlements). Were this motion for partial summary judgment denied, LBHI could not seek indemnification without proving its liability as to tens of thousands of defective loans in the same manner that the Trustees would have been required to prove LBHI's liability at trial. This rule would eliminate any incentive for LBHI to settle the RMBS Trustees' claims to save the costs and expenses of trial in the first place. Thus, such a rule effectively would force the parties and the Court to incur the cost in time and money of trying a case involving alleged breaches of representations and warranties in over 70,000 mortgages. To avoid a result that would be contrary to public policy favoring settlements, the Court should permit LBHI to establish its right to indemnification without proving its liability.

## CONCLUSION

For all the foregoing reasons, the Court should grant LBHI's motion for partial summary judgment and rule that (1) as to the 111 Defendants listed on Kuehn Declaration Exhibit 10, LBHI provided sufficient notice of its settlement of claims asserted by the Trustees, and (2) as to all Defendants, LBHI can establish a right to indemnification upon a showing that the settlement was reasonable and entered into in good faith.

Dated: New York, New York
March 17, 2020

Respectfully submitted,

By:  /s/ Brant Duncan Kuehn

William A. Maher
Brant Duncan Kuehn
Brad J. Axelrod
James N. Lawlor
Adam M. Bialek

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050

*Counsel for Plaintiff Lehman Brothers Holdings Inc.*

15